UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CYRUS AMIRI,<br>   *Appellant*,<br><br>v.<br><br>ABTIN VAZIRI,<br>   *Appellee*. | No. 1:24-cv-00236-MSN-WEF |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Creditor Cyrus Amiri's appeal from the Bankruptcy Court for the Eastern District of Virginia. Appellant argues that the Bankruptcy Court erred by refusing to dismiss Appellee's Chapter 13 bankruptcy case with prejudice and in ultimately affirming Appellee's bankruptcy plan. Finding that the Bankruptcy Court acted within its discretion, this Court will affirm those decisions.

**I. BACKGROUND**

Appellee filed a Chapter 13 bankruptcy petition on May 30, 2023. ECF 2-1 ("Record") at 1. The same day, Appellee filed his first Chapter 13 plan, which proposed payments to the Trustee of $2,500 per month for 60 months. Record 76-77. On July 19, 2023, the Chapter 13 Trustee objected to the plan, claiming that it violated the statutory requirements of good faith and feasibility, since Appellee could afford higher payments and the plan failed to account for an IRS claim. Record 118-120. In response to this objection Appellee on September 8, 2023, filed a second plan that provided for 14 months of $2,400 payments and 46 months of $3,200 payments. Record 120-121. That plan would have resulted in the payment of approximately 73% of the debt owed to Appellee's unsecured creditors. Record 121. This time, both the Trustee and the Appellant filed

objections to the plan. On October 4, 2023, Appellant objected that the plan was noncompliant because it was "not entirely accurate" and therefore not filed in good faith, and did "not provide for all of debtor's projected disposable income." Record 133. The Trustee also objected, arguing the plan was underfunded and did not reflect the extent of Plaintiff's disposable income. Record 142-143.

Appellee filed his third (and final) plan on November 30, 2023. Record 150. That plan provided for 100% repayment of his debts and laid out payments to the Trustee of $2,500 per month for ten months, then $3,780 for eight months, then $4,730 for 42 months.

On December 20, 2023, Appellant filed a motion to dismiss Appellee's case. *See* Record 182-186. In his Motion, Appellant argued that the stepped-up payments in the third plan showed that the plan was filed in bad faith, suggested that Appellee could not actually afford repayment, and further argued that inaccuracies in the debtor's bankruptcy schedules showed that his petition was not filed in good faith. *See id.* He therefore asked the Bankruptcy Court to dismiss the case with prejudice for a period of six months. Record 186. In response, Appellee argued that the stepped-up payments in the plan were put in place to ensure he could pay his 2023 tax bill and necessary expenses that he had delayed. Record 190. He further argued that his anticipated changes in income would allow him to afford the stepped-up payments at ten and eighteen months into the plan. Record 190-191.

The Bankruptcy Court heard Appellant's motion to dismiss on January 18, 2024. Record 235. The Bankruptcy Court considered Appellant's allegations of inaccuracies. Record 241-258. While Appellant initially argued that Appellee's argument regarding his 2023 bill was "baloney," his counsel conceded that "there might be a tax bill coming that he's coming to have to address." Record 256. At the conclusion of the argument, the Bankruptcy Court stated that she saw from the

petition "a debtor who has demonstrated extremely bad judgment in his financial life," but did not "see bad faith here," particularly considering the "one-hundred percent repayment plan." Record 258-259. The Bankruptcy Court rejected the argument that "if you don't file a plan that's confirmable in the first three tries," the case should be "dismissed with prejudice." Record 259. The Bankruptcy Court also focused throughout on the fact that unlike in a Chapter 7 case, the Appellee's filings in Chapter 13 bankruptcy are prospective or forward-looking and are not intended to reflect exact statements of his past income, assets, or expenses. Record 245, 246, 258. Accordingly, the Bankruptcy Court denied the motion to dismiss but invited Appellant to file an objection to confirmation of the plan. Record 259.

On January 24, 2024, Appellant filed an objection to the plan's confirmation, citing the Bankruptcy Court's authority under 11 U.S.C. § 1325(a)(7) to deny confirmation of a petition if it was not filed in good faith. Record 198. In support of the proposition that the petition was not filed in good faith, Appellant listed a litany of alleged "omissions/falsehoods" in Appellee's schedules. Record 212-214. Appellant further argued that because Appellee did not initially propose a 100-percent repayment, but instead had to be dragged into one "kicking and screaming," he was not serious about filing a plan in good faith. Record 201-203. In response, Appellee noted that the arguments made were the same ones addressed by the Bankruptcy Court in its ruling on the motion to dismiss. Record 213-214. He further argued that the facts demonstrated he had not "abuse[d] . . . the provisions, purpose, or spirit" of Chapter 13, and therefore had acted in good faith. Record 214 (citing *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982). Appellee then provided explanations for or disputed the alleged discrepancies Appellant pointed to in his motion. Record 215-218. In particular, he noted an anticipated $20,000 tax bill for 2023 that he would need to use

his current available funds to pay in 2024, and that if that tax debt was not planned for the tax authorities could move to dismiss the case. Record 218-219.

The Bankruptcy Court held a hearing on confirmation of the plan on February 1, 2024. Record 283. Appellant's counsel stated that the "objection to confirmation [was] more or less the same as the prior motion to dismiss." Record 271. Appellee's counsel responded by arguing that under the totality of the circumstances the plan was filed under good faith, noting that creditors would be made whole, and that the stepped-up payments were justified. Record 284-285. Finding that the objection was simply a "rehashing" of the motion to dismiss, the Bankruptcy Court overruled it. Record 272. The Bankruptcy Court then entered an order confirming the plan on February 2, 2024. Record 223-226.

Appellant noticed this appeal on February 15, 2024, seeking review of each of the above-described rulings. ECF 1-1.

## II.   STANDARD OF REVIEW

"When reviewing a decision of the bankruptcy court a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010). This Court "thus review[s] the bankruptcy court's legal conclusions de novo and its factual findings for clear error." *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). To find that a finding of fact is clearly erroneous, this Court must be "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

## III.   LEGAL FRAMEWORK

Under the Bankruptcy Code, a Chapter 13 plan may not be confirmed if it was not "proposed in good faith." 11 U.S.C. § 1325(a)(3). Similarly, the "action of the debtor in filing the

4

petition" must also have been "in good faith." *Id.* § 1325(a)(7). Courts decide whether good faith exists based on the totality of the circumstances, and look to factors including "the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces." *In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995). A bankruptcy court should consider these factors "mindful of the fact that the good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13." *Id.* While this good faith inquiry is most frequently applied to issues arising under Section 1325(a)(3), the Fourth Circuit has cited the same factors and inquiry to cases under Section 1325(a)(7). *See In re Bateman*, 515 F.3d 272, 283 (4th Cir. 2008). Further, "[i]n the bankruptcy context, a court's finding with respect to the good faith requirement is reviewed for clear error." *Gorman v. Cantu*, 713 Fed. Appx. 200, 204 (4th Cir. 2017) (quoting *Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704, 709 (4th Cir. 2011)) (cleaned up).

IV.   **ANALYSIS**

Appellant asserts several errors in his brief on appeal. First, he argues that he "should have been afforded the opportunity to put on his evidence that the debtor filed his bankruptcy case bad faith [sic]," and that he should have been allowed to call Appellee to the stand to testify at the hearing. ECF 4 ("Br.") at 11. He further objects to the ruling on the motion to dismiss by arguing that "the bankruptcy court essentially created a per se rule that those debtors that file a 100 percent plan can never have their cases dismissed, regardless of how much bad faith they engaged in filing

their petition." *Id.* Further, Appellant asserts that on confirmation of the plan, Appellee had the burden of demonstrating good faith, and did not do so—again, in part because he did not testify. Br. 16-18. This Court finds that Appellant has identified no reversible error, and will therefore affirm the decisions of the Bankruptcy Court to deny his motion to dismiss and to confirm Appellee's plan.

> **A.      Appellant has identified no error with respect to the evidence considered by the Bankruptcy Court.**

Appellant argues that after he filed a motion to dismiss Appellee's case, he should "been afforded the opportunity to put on evidence" and to "call the debtor as a witness to testify." Br. 11. As for his first argument—that he should have been afforded the opportunity to put on evidence— Appellee does not explain how he was denied this opportunity. The transcript of the hearing indicates that Appellee's counsel was able to walk the Bankruptcy Court through the litany of alleged errors that Appellee claims show that the petition was filed in bad faith. *See* Record 241-258.

Appellant next claims that since "good faith was put at issue," "it was incumbent on the debtor to take the stand and testify that he filed his case in good faith." Br. 11. This misses the mark. On a motion to dismiss a Chapter 13 bankruptcy case, "the party seeking to dismiss the debtor's case has the burden of proving that the debtor's bad faith warrants dismissal." *In re Page*, 519 B.R. 908, 913 (Bankr. M.D.N.C. 2014) (citing *Matter of Love*, 957 F.2d 1350, 1355 (7th Cir. 1992)).[1] Furthermore, Appellant cites to no authority supporting a right on a motion to dismiss to call the debtor to testify, and make no legal argument why this Court should create one today. The

---

[1] Appellant's citation to *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) is inapposite, as that case involved good faith under Chapter 7. *See* Br. 11.

Court will therefore not reverse the Bankruptcy Court's decision on the motion to dismiss on the ground that she did not allow Appellant to call Appellee to the stand.

      **B.**      **The Bankruptcy Court did not clearly err in finding good faith when hearing Appellee's motion to dismiss.**

Appellee next argues that the Bankruptcy Court committed reversible error by refusing to dismiss the case. In doing so, he frames the Bankruptcy Court as arriving at a legal conclusion that "those debtors that file a 100 percent [repayment] plan can never have their cases dismissed, regardless of how much bad faith they engaged in filing their petition because they were willing to pay their creditors back in full." Br. 11. Because "the Bankruptcy Code does not create an exception for those debtors who are willing to propose a 100 percent [repayment] plan," Appellant argues the case should have been dismissed. Br. 12.

Appellant's move here—attempting to recast what is ordinarily a factual determination as a legal conclusion—doesn't pass the smell test. There is no indication in the record that the Bankruptcy Court made the legal conclusion that Appellant argues it did. Rather, the Bankruptcy Court's consideration of the repayment percentage was entirely appropriate, as the Fourth Circuit has held that "the percentage of proposed repayment to creditors" is the first factor to look to when determining good faith under the totality of the circumstances. *In re Solomon*, 67 F.3d at 1134. Furthermore, the records belies Appellant's view that the Court relied solely on the repayment amount *in spite of* falsehoods in Appellee's filings. Rather, the Bankruptcy Court appears to have *credited* Appellee's arguments that his filings made sense in the context of a prospective, Chapter 13 personal bankruptcy, and that the stepped-up payments reflected Appellee's need to pay his 2023 taxes. *See* Record 245, 246, 256, 258. Therefore, the Bankruptcy Court's decision does not evince the kind of erroneous bright-line rule that Appellant claims it does.

For these reasons, the Bankruptcy Court's determination that Appellant did not show bad faith should be understood—as it ordinarily is—as a factual determination warranting clear error review, not a legal conclusion to be reviewed de novo. *Behrmann*, 663 F.3d at 704. Under this standard of review, this Court only need find that there is evidence to support the Bankruptcy Court's determination, and that no "definite and firm conviction that a mistake has been committed" is warranted. *Anderson*, 470 U.S. at 573. Here, there was evidence in the record to support the Bankruptcy Court's conclusion: the proposed plan paid 100 percent, Appellee's submissions explained the claimed discrepancies and "bad faith," there was no information to cast doubt on Appellee's employment prospects, and Appellee lacked a lengthy or complicated history of prior bankruptcy claims. *See In re Solomon*, 67 F.3d at 1134. This is not to say that no evidence pointed in the other direction. As the Bankruptcy Court noted, the case involves "a debtor who has demonstrated extremely bad judgment in his financial life" and had a "gambling problem." Record 258-259; *see In re Solomon*, 67 F.3d at 1134 (asking courts to consider, as part of the totality of circumstances, "the nature of the debtor's pre-petition conduct that gave rise to the debts" and "the debtor's financial situation."). In finding good faith, the Bankruptcy Court assessed the totality of these circumstances. This assessment hardly leaves this Court "with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573.

   **C.**  **The Bankruptcy Court did not clearly err in approving the bankruptcy plan.**

To approve the bankruptcy plan, the Bankruptcy Court was required to find that it was "proposed in good faith" and also that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(3), (7). Appellant asserts that the Bankruptcy Court erred by approving the plan (over his objection) without "requiring the debtor to testify and to prove by a preponderance of the evidence that he filed his third plan in good faith." Br. 16. In this instance, Appellee is at least correct that the burden of showing good faith lies with the debtor. *See In re*

*Daniel*, 260 B.R. 763, 766-767 ("The debtor has the burden of proof of establishing that the plan is filed in good faith, as required by Code § 1325(a)(3)."). But Appellant offers no basis in law for his proposed requirement that the debtor himself *testify* in open court to meet that burden. Courts in this Circuit have made findings of good faith *without* any mention of a debtor's testimony. *See, e.g.*, *In re Mark*, 336 B.R. 260, 267-268 (Bankr. D. Md. 2006) (looking to record evidence to determine that debtor acted in good faith); *In re Carr*, 344 B.R. 776, 782 (Bankr. N.D. W. Va. 2006) (same). Moreover, this Court has not found any case in this Circuit finding a lack of good faith on the ground that the debtor in a Chapter 13 bankruptcy did not testify.

Rather, the record here supports the notion that the Bankruptcy Court found good faith on the same grounds as in its prior decision denying the motion to dismiss. Record 271-272. This supports that the determination was made after weighing the record evidence and presentations from Appellant's and Appellee's counsel. For the reasons described above, that determination was not clear error. *See supra* § IV.B.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Appellant's appeal is **DENIED** and the Bankruptcy Court's orders denying Appellant's motion to dismiss and confirming Appellee's bankruptcy plan are **AFFIRMED**.

The Clerk is directed to close this civil action.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

January 3, 2025
Alexandria, Virginia